BRADY, guardian, *vs.* BRADY, trustee, *et al.*

1. While it might be more regular for the husband as head of the family to interpose a claim to a levy on a homestead for his debts, yet the wife has sufficient interest to support a claim by her.

2. Although an exemption in bankruptcy vests no title in the family of the debtor, yet if properly supplemented by setting it apart under state laws, it may become material.

3. Where the division of the estate of a decedent was by agreement submitted to arbitrators, whose finding should vest a fee simple title to the lands assigned, and they set apart certain land to one of the distributees, and returned as part of the assets of the estate a debt due by him (part of which was incurred before the death of the intestate), such debt was neither legally nor equitably for pur-chase money so as to take precedence of a homestead in the land.

4. Where, upon application for a homestead under the constitution of 1868, the ordinary fixed a time and place for passing upon the same, and on that day he was absent from the county, and no provision for a continuance was made, he could not subsequently, without further notice or order, approve the application and grant the home-stead.

Homestead.    Claims.    Husband and Wife.    Evidence.
Bankruptcy.    Arbitrament and Award.    Jurisdiction.
Ordinary.    Before Judge CRISP.    Sumter Superior Court.
October Adjourned Term, 1880.

Reported in the decision.

GUERRY & SON, for plaintiff in error.

HAWKINS & HAWKINS; ALLEN FORT, for defendants.

SPEER, Justice.

Wright Brady, Sr., of Sumter county, died intestate in 1871. His widow, Jane Brady, took out temporary letters upon his estate and proceeded to administer. The intestate left as his heirs at law Jane Brady, his widow, and five children, to-wit: Wright Brady, Jr., Lou Pryor, (formerly Brady), Albert Brady, Charles Brady and Katie Brady, the last three minors.

In 1872 Wright Brady, Jr., one of the heirs, filed a bill against the administratrix, alleging acts illegal and destructive of the estate, and sought her removal. Pending the bill Jane Brady, for herself and as guardian for the three minors, Albert, Charles and Katie, the complainant in the bill, Wright Brady, Jr., and Mrs. Pryor, all entered into a submission by which they agreed to submit all the matters connected with the administration of said estate to three arbitrators chosen by themselves, including also the settlement and distribution of the estate of Wright Brady, Sr. In the submission it is recited: Whereas, the said parties (to the submission,) have, by themselves and attorneys at law, since the filing of the bill by Wright Brady, Jr., agreed upon a certain basis of settlement of said matters in controversy, and for the distribution and settlement of the estate of said Wright Brady, deceased, and which is in pursuance of the orally expressed wishes of the said Wright Brady, deceased, while in life. The stipulations and import of which are as follows:

Mrs. Brady relinquishes her right to dower and twelve months' support for herself and children, and in consideration thereof all of said parties mutually agree to submit the division and settlement of the estate, to arbitrators, and for this purpose select Hooks, Glover and Burwick as arbitrators of said estate, to be divided and

settled on the following basis, which is also in accordance with the said orally expressed wishes of said Wright Brady, deceased :

1st. Wright Brady, Jr., is to have the settlement of land whereon he now lives, consisting of two lots, 218 and 225, containing 405 acres.

2d. Lou Pryor, wife of Wm. Pryor, is to have the settlement on which they now live, being lots 217 and 250, containing 405 acres.

3d. Albert Brady is to have lot number 216, south half of 227, and 66 acres of lot 193, containing in all 369 3-4 acres.

4th. Katie Brady is to have lots 252 and 253, containing 405 acres.

5th. Charles Brady is to have lots 220 and 223, containing 405 acres.

6th. Mrs Jane Brady is to have home place, consisting of 150 acres of lot 190, the whole of lot 219, containing in all 355 acres, all of said lands situated, and parties residing in Sumter county, and the titles thereto to said parties to be in fee simple.

7th. Further, said three minors, to-wit : Albert, Katie and Charley, each are to have out of said estate the sum of one thousand and fifty dollars to equalize advancement made to Wright Brady, Jr., and Mrs. Pryor by the intestate. Further, said minors are to have out of said estate each $500.00 for educational purposes, and Mrs. Jane Brady $150.00 to equalize her advancements ;·all the balance of said estate to be equally divided between the heirs of said estate. Further, said submission provides for a settlement of a lawsuit then pending, the heirs to be equally interested in said settlement.

Further, the submission provides that by said award the respective tracts or parcels of land, as hereinbefore divided, shall be equalized in value among said heirs, except the land assigned to the widow—the lands to those heirs more valuable to pay to the others less valuable the difference,

but the improvements that have been made by said Wright Brady, Jr., and Pryor, on their respective tracts not to be considered by said arbitrators in making said calculation.

Further, said arbitrators are to proceed to the performance of their duty under this submission. Provision is further made that the award of the arbitrators when rendered shall operate without deeds of conveyance to divest title in the estate of Wright Brady, deceased, and vest absolutely in fee simple the title to the lands awarded to each as fully as by a regular conveyance.

It appears further that the arbitrators under said submission met and awarded to Wright Brady, Jr., lots 218 and 225, which were appraised, exclusive of improvements, at $2,420.00, he to have the fee simple title to the same.

2d. To Mrs. Pryor lots 217 and 250, valued at $2,120 00, exclusive of improvements, in fee simple.

3d. Albert Brady, lot 216, south half of 217, and $60\frac{2}{8}$ acres of lot 193, valued at $4,000.00.

To Katie Brady, lots numbers 252 and 253, valued at $1,000.00. To Charles Brady, lots numbers 220 and 223, valued at $2,820.00. The whole valuation $12,360.00, and making an equal share $2,472.00. Further, they awarded Albert Brady should pay to Katie Brady $1,472.00; to Wright Brady, $52.00; to Lou Pryor, $4.00, making the sum of $1,528.00 to be paid by him. That Charles Brady pay to Lou Pryor, $348.00. They awarded to Jane Brady lands assigned her in the submission in fee simple.

The arbitrators further find that there is due the estate the sum of $10,634.28; among said debts so due is a note by Wright Brady, Jr., of $1,755.76. They further find there is due by the estate, including the $1,550.00 to be paid to minor distributees, $8,483.30, which leaves balance in hand of administratrix to be paid to distributees, the sum of $2,155.98, and award therefore to each distributee $359.33. They further award that these sums, thus awarded to Wright Brady, Jr., and Mrs. Pryor, shall be set off and

applied as credits on the amounts due by each to the estate.

The award was duly signed by the arbitrators on 4th of September, 1872, and made the judgment of the court. Subsequently, on 4th of September, 1872, on a settlement of amounts which Wright Brady, Jr., owed the estate of the intestate, he gave his notes and mortgage deed to secure the same to Jane Brady, as guardian, for the minors Albert, Katie and Charles, in the sum of about three thousand dollars, with interest, and due in three installments, on the two lots he had awarded him from the estate of his father. Subsequently the mortgage was foreclosed and a recovery had against said land for the sum of $2,068.00, principal, besides interest and cost. The mortgage *fi. fa.* was levied on said land, and a claim to the same interposed by Hattie L. Brady (wife of said Wright), and her three minor children. On a trial of said claim, under the evidence submitted and charge of the court, the property was found not subject. Whereupon plaintiff in error made a motion for a new trial, on the various grounds as set forth in the record, and on the same being refused plaintiff excepted, and assigns the said refusal as error. The grounds of the motion were as follows:

(1.) Because the verdict is against law and evidence, and without evidence to sustain it.

(2.) Because the court erred in charging the jury, "That if the property was set apart to defendant, Wright Brady, as a homestead, then the wife had sufficient interest in the property to support a claim, and if she showed that the homestead was legal, and if she made out a good case, she is entitled to a verdict.

(3.) Because the court erred in admitting in evidence the homestead, over objections on the ground that the same could not support the claim of the wife, the husband, the applicant and head of the family, being in life.

(4.) Because the court erred in charging that the homestead paper in evidence was a valid paper, it appearing

that the hearing of the application was set for 26th of May, 1877, and on that day the ordinary was not in his office, but absent from the county. That on his return on the following Monday, the 28th, he prepared an order continuing the case from Saturday until Monday, and thereupon approved said application without further notice.

(5.) Because the court erred in admitting in evidence the assignment made in bankruptcy proceedings concerning the same, heretofore referred to, the judgment therein not vesting any title in the wife, and she, as well as defendant, being estopped by the former judgment of the court foreclosing the mortgage.

(6.) Because plaintiff insisted that said land was subject to said *fi. fa.* for the following reasons: Said debt was equitably purchase money—that under the award it was an equitable charge, and the defendant could not take thereunder without doing what was incumbent upon him thereunder, or that the notes were given and did have the effect to remove an incumbrance from said land; the court failed to submit the issue fairly to the jury, inasmuch as the charge of the court altogether had the effect to submit the question as to whether the claim was for the purchase money or in the nature thereof, all of which will appear from the whole charge of the court attached.

(7.) Because the court erred in charging the jury as follows: " I say to you, by the terms of the submission and award which are in evidence, the temporary administratrix, the guardian of the children, and the heirs agreed upon a disposition of the real estate of Brady, deceased; by the terms of the submission they agreed to the particular property Wright Brady should have. There is nothing in the submission or award requiring them to pass upon that question, of the liability of Wright Brady, Jr. to the estate. It is true, it was for the settlement of the estate, but they mark out in what manner they dispose of the land; the arbitrators specify in the award that he

is entitled to have lots of land number 218 and 225. This gave him a fee simple title in these two lots. They do not charge him before he can receive the land with paying money that may be due the estate of his father, but in enumerating the assets of the estate, they state that their assets consist in part of a note or notes of Wright Brady, Jr. What was the considerations of these notes? Were they for the purchase money of land? I believe it is not insisted that they were, strictly speaking,—counsel relying upon the equity of the case If you believe these arbitrators awarded to Wright Brady a fee simple title to these lots, and in their award mentioned the fact that he was indebted to the estate of his father so many dollars, and after the award Wright Brady, Jr., gave these notes and the mortgage upon the land, payable to Jane Brady, guardian, for the amount that was due the estate of his father at his death, and matters he may have become indebted after his death, then it is not the purchase money of the land, nor in the nature of purchase money. If that is the character of this debt, then there is no reason why the homestead should not prevail against it."

(8.) Because the court erred in refusing to allow plaintiff to put in evidence two original receipts of Wright Brady for advancements from his father, as set forth in said motion for new trial.

We have deemed it necessary to enter thus into the details of this case that we may intelligently dispose of the questions made by this record.

1. The second ground of error is as to the right of this claimant, being a mere beneficiary of the homestead estate, to interpose the claim. While we think it would be more regular for the head of the family, who is regarded as the trustee, to interpose to protect the interest of the beneficiaries, yet this court has held that the wife has such an interest in the homestead property that she may interpose as a claimant to protect it from the judgment creditors of her husband, and we see no good reason to deviate

from that ruling. 61 *Ga.*, 501. If this be true, then the court committed no error for this reason, in admitting in evidence the record of the homestead, because it did not support the claim of the wife, as is alleged in the third ground of the motion.

2. As to the fifth ground of the motion, that is, that the court erred in admitting in evidence the assignment made in the bankruptcy proceedings of defendant; in the absence of all proof of a homestead under the state law, this evidence would have been irrelevant, since, under the previous rulings of this court, neither the wife nor children take any interest in an exemption in bankruptcy allowed to the husband, unless the same was supplemented by a proceeding before the state courts to have the same exempted, as provided for by the constitution and laws thereof. But, after all, as to this evidence we do not know it was such an error as would have demanded a reversal of the court below, had the claim been fully sustained by proof otherwise.

3. Nor do we find any error in the charge of the court, as set forth in the sixth and seventh grounds, on the subject of instructing the jury that the consideration of the mortgage executed by Brady, Jr., to Jane Brady, under the facts as set forth in the record, was not purchase money or equitably in the nature of purchase money. The evidence clearly shows that Wright Brady, Jr., the mortgagor, received the lands levied on as a distributee of his father's estate, with the written consent of all the other distributees, including the plaintiff in error, in the settlement of the estate, and that this distribution was afterwards more formally ratified and affirmed by an award, assented to by all parties at interest, and made absolute by the approval and judgment of the court. He received his title under said submission and award, and to all the other distributees lands of equal value, or made equal on valuation, were likewise conveyed. We cannot see how a debt he was due the estate, and a large portion before the

death of his father (and for which the mortgage was given), could be claimed to form any part of the purchase price of these lots thus received and now in dispute.

4. There remains, then, but the fourth ground of error as set forth in the motion to dispose of : " Because the court erred in charging that the homestead paper in evidence was a valid paper under the proofs submitted."

It appears from the record that on the 28th of April, 1876, Wright Brady filed his application before the ordinary of Sumter county, under oath, as the head of a family, "asking for an exemption and homestead in personalty and realty, under the constitution and laws of 1868, attaching thereto a schedule of his property, and asking for an order to the county surveyor to lay off the homestead allowed by law," etc. It further appears from the record that the ordinary fixed for a hearing of said homestead application the 26th day of May, 1876, at 2 o'clock P. M. ; that on that day appointed the ordinary was not only absent from his office, but also from the county, and no provision was made by him on that day for a continuance of said cause; that on the 28th he returned to his office and made the following entry on the record :

"ORDINARY'S OFFICE, 28th May, 1877.

This case was set for trial on the 26th inst., at 2 o'clock. and there being no objection filed, and owing to absence from the county, the case was continued over until to-day.

GEO. A. BROWN, *Ordinary*."

The record further shows that on that day the homestead was approved and recorded. This application for homestead has been well likened to a suit instituted for the recovery of a use in property, as against the claims of creditors, for the benefit of the family. To facilitate, as it was deemed so commendable an object, not only were liberal homesteads allowed by the laws, but a speedy and simple process of recovery was provided by law.

But in order that all parties at interest might be informed of said application, the law required the ordinary to fix

not only the day but also the hour and place where he shall pass upon said exemption, so that (as the statute declares) "all persons may know the time for action by the ordinary on the petition."

Further, the statute provides if at the time and place appointed for passing upon said application, no objection shall be urged by any creditor of the applicant, the ordinary shall indorse upon said schedule and upon said plat, approved, etc., filling blanks, etc.

It appears from the record that this application was fixed to be heard on the 26th May, 1877, at 2 P. M., at the ordinary's office. That on that day and at that hour he was absent from the county. That he returned on 28th, and without further notice proceeded to approve the homestead application, and dated the same on 28th May, 1877. We know of no authority in the ordinary at his pleasure or convenience, without at least his presence on the day, hour and place fixed, and a regular continuance to a future day, to set apart and approve the homestead on a day different from that appointed by himself. The object of the law was, in its own language, to give all persons notice of the time for action by the ordinary on said petition, and it is not in the power of the ordinary to appoint day, hour and place in his public notice, and then, on a different day and hour, and without further notice, proceed thus summarily to adjudicate on such important rights. We feel bound, under our view of the law, to adjudge that a homestead thus set apart and approved is illegal and void, as being rendered *coram non judice.*

The jurisdiction of the setting apart and assignment of homesteads under the constitution of 1868 is conferred by statute law on the ordinary, and he must pursue the mode and order therein declared in the discharge of the duty thus imposed. When he deviates from that order, and undertakes to prescribe one to suit his own convenience, and follows that, he is acting without authority of

law, and his action is illegal and void. In harmony with this construction may be cited rulings by this court where the law prescribes the exercise of jurisdiction by magistrates within certain limited periods, where it was held that jurisdiction exercised by them on a day nearer or beyond the periods fixed by law was without authority of law, and their action void. 56 *Ga.*, 282 ; 59 *Ib.*, 532 ; *Ib.*, 603.

We can but conclude, then, that under the facts of this case this homestead was not assigned or set apart in conformity to law, and that the court erred in so instructing the jury, as set forth in the fourth ground of the motion.

Let the judgment of the court below be reversed, and a new trial ordered.

Judgment reversed.